UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO
ALBUQUERQUE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO: 1:25-cr-05221-KWR-8 |
| | ) | |
| Plaintiff, | ) | CRIMINAL |
| | ) | |
| vs. | ) | Albuquerque, New Mexico |
| | ) | |
| YORVIS MICHEL CARRASCAL-CAMPO, | ) | Friday, February 20, 2026 |
| | ) | |
| Defendant. | ) | (10:16 a.m. to 10:33 a.m.) |

ARRAIGNMENT / DETENTION HEARING

BEFORE THE HONORABLE LAURA FASHING,
UNITED STATES MAGISTRATE JUDGE, PRESIDING

APPEARANCES:

| | |
|---|---|
| For Plaintiff: | AUSA TIMOTHY TREMBLEY<br>U.S. Attorney's Office<br>P.O. Box 607<br>Albuquerque, NM 87103 |
| For Defendant: | RYAN J. VILLA, ESQ.<br>5501 Eagle Rock Ave. NE, Suite C2<br>Albuquerque, NM 87113 |
| Interpreter: | Enith Valdes-Ortiz |
| U.S. Pretrial/Probation: | Anthony Galaz |
| Court Reporter: | Recorded; Liberty: Rio Grande |
| Clerk: | N. Maestas |
| Transcribed By: | Exceptional Reporting Services, Inc.<br>20079 Stone Oak Pkwy., Suite 1105-237<br>San Antonio, TX 78258<br>361 949-2988 |

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

**Albuquerque, New Mexico; Friday, February 20, 2026; 10:16 a.m.**

**(Interpreter utilized for translation)**

**THE CLERK:** *United States versus Yorvis Michel Carrascal-Campo*.

**THE COURT:** May I have appearances, please.

**MR. TREMBLEY:** Good morning, Your Honor. Timothy Trembley on behalf of the United States. I have heard and understood the Court's Due Process Protections Act advisement and the United States will comply.

**THE COURT:** All right. Thank you.

**MR. VILLA:** Good morning, Your Honor. Ryan Villa on behalf of Mr. Carrascal-Campo who is present in custody.

**THE COURT:** All right. We are using the services of the Court's previously sworn court interpreter this morning. So Mr. Carrascal-Campo, first let me ask you, are those headsets working okay?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** All right. Now, the first -- we're here for both an arraignment and a detention hearing so I first want to do the arraignment aspect of the case and I want to ask you first, have you received a copy of the indictment that's been filed against you?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** And has that indictment been read to you in Spanish?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** All right. So it's my understanding that Mr. Carrascal-Campo is charged in Counts 1, 2 and 4. Is that accurate?

**MR. TREMBLEY:** That is, Your Honor.

**THE COURT:** Okay. So let me ask you, Mr. Carrascal-Campo, have you discussed those particular counts and charges with your attorney, the ones in Counts 1, 2 and 4?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** Have you discussed with him not only the charges that you face but also the potential penalties?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** Do you understand what those charges are and what the potential penalties are?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** All right. How do -- what is your position, Mr. Villa, with respect to reading the indictment?

**MR. VILLA:** Your Honor, we'd waive a formal reading and enter pleas of not guilty to all three counts.

**THE COURT:** Okay. I will enter a plea of not guilty on your behalf to the three counts in which you are named.

This case is assigned to Judge Riggs and she will set the trial date.

Your motions are due on March 12th and I will issue a standard discovery order.

**MR. VILLA:** Your Honor, is I may? In reviewing the docket I believe there's an order declaring the case complex. It's already been entered.

**THE COURT:** Okay.

**MR. VILLA:** So I would ask if that motions hearing or motions deadline and discovery order not be set at this time.

**THE COURT:** Mr. Trembley?

**MR. TREMBLEY:** I would agree, Your Honor. We had vacated the original scheduling order at least for the prior defendants. And so the Court's going to hold a hearing in about 90 days, my understanding based on the filings, so that we can get scheduling in order given the complex case designation.

**THE COURT:** Okay. So I will retract what I just said. I will not enter a discovery -- the standard discovery order and I will not set a motions deadline.

All right. So the next issue is detention. He was arrested in Colorado but I believe he reserved his right to contest his detention here. Is that accurate, Mr. Trembley?

**MR. TREMBLEY:** Yes, Your Honor.

**THE COURT:** Okay. And so the recommendation of -- what is the recommendation? Pretrial Services recommends detention. Mr. Villa, what is your position with respect to that recommendation?

**MR. VILLA:** Your Honor, we would contest detention.

**THE COURT:** Okay. So Mr. Trembley, why don't you tell me, from your perspective, assuming you agree that detention is appropriate. Is that your position?

**MR. TREMBLEY:** It is, Your Honor.

**THE COURT:** Okay. So Mr. Trembley, if you wouldn't mind going over the reasons that you believe that Mr. Carrascal-Campo should be detained; and then Mr. Villa, I'll give you a chance to respond, okay?

**MR. VILLA:** Thank you.

**MR. TREMBLEY:** Yes, Your Honor. So as to detention, it is a presumption case based on the serious nature of the charges, the violent nature of the charges. But even despite that, the defendant poses both a risk of flight and a danger to the community.

The Pretrial Services Report pretty aptly lays out the risk of flight which is the offense charged and the defendant's conduct during arrest for the instant offense. It references the nature of the alleged instant offense which is serious and I'll get into a little bit more in detail in a minute but the defendant also fled from law enforcement when they attempted to arrest him out in Colorado. They had to chase him down and they ended up arresting him in a neighbor's backyard. So that right there shows some risk of flight.

He has no ties to the community. I believe the only person that they could find that knows him who's not in custody

is his wife or his girlfriend. Even his children still are outside of the country so he has substantial ties outside of the country.

He has -- he has used aliases or at least two alias names according to the Pretrial Services Report. He has no verifiable legitimate employment. He also has no authorization to be employed. When he was asked about his employment he gave the name of a company that at least Pretrial Services couldn't find exists. He has ties to a foreign country; that being, Venezuela, and he also is an illegal alien with a final deportation order.

Obviously the Court can’t consider that the United States would in all likelihood deport him if he were released or at least detain him in custody pending deportation; however, the Court can consider that in the I would say the unlikely scenario that he does get released into the United States, his incentive to flee would be massive. It would be either stay in the country and risk the chance that he gets convicted of the offenses and face life or death in prison -- life in prison or death -- or he could flee the country and face likely flee to Venezuela and face no consequences whatsoever and that seems like the far more likely outcome given his current situation.

He does not have a stable living situation. Even in Colorado he couldn't even identify his address. Law enforcement knows where he lives because they were tracking him

but he wouldn't -- he didn't provide that information to the Pretrial Services Report.

He also didn't provide any other information regarding gang involvement, drug use, any of that which appears to be on the advice of counsel but we actually do have that information and that goes more towards the danger to the community. Under -- you know the Court can read the indictment but he was involved in Tren de Aragua which is a violent Venezuelan gang. He was involved in several crimes in the United States, all of which occurred in several states, in New Mexico, Colorado and some of his activity even occurred in Atlanta and the crimes are serious. He's accused of a gang-ordered hit, a gang-ordered murder where he was one of the people, along with a second codefendant, who after one of the cords that they were using to choke a rival gang member broke, him and another gang member got a second cord and choked him until the individual died. They then put -- this particular defendant was involved in putting his body in a suitcase and helping others clean up the murder scene before going to the burial site in a remote location that just -- in a remote area within Albuquerque and buried the individual, and law enforcement was able to locate that individual several months later and dug up his body.

He was involved in drug trafficking of Tusi, primarily. He provided the group, the gang within Albuquerque

with both raw ketamine and pre-made Tusi.

He was involved in sex trafficking. One of the victims indicated that he had threatened them with a firearm and threatened to kill her if she tried to leave. And he’s also alleged to be involved in distinct sex trafficking in Atlanta.

And so the United States asks that the Court find that he has not sufficiently rebutted the presumption of detention in this case. And even if he does, the Court follow the Pretrial Services recommendation of detention as both a risk of non-appearance and a danger to the community.

**THE COURT:** Mr. Villa?

**MR. VILLA:** Thank you, Your Honor.

With respect to the presumption, we agree it’s a presumption case and I recognize the Pretrial Report indicates that there’s a final deportation order. I have not been provided that documentation and haven't had a chance to investigate his immigration status; however, I do believe at least there’s anecdotally circumstances recently that have happened here where individuals who have various immigration court orders have been released from detention based on habeas filings. And so I just don’t know the status of Mr. Carrascal-Campo’s immigration case or whether he would be entitled to any sort of release pending the outcome or if there’s an appeal of that deportation order, those sorts of things. I think

Pretrial Service Report did indicate that there was a language barrier that maybe caused some of the problems in receiving information from the defendant as well as his wife and so I haven't had an opportunity having just been appointed to the case yesterday to explore that information.

As well, he appears to have no criminal record at all in the United States so the only criminal conduct is what’s been alleged by the United States. My understanding so far is the discovery has not been produced to any of the parties. I recognize that’s probably an administrative process and there’s a process of getting protective orders in place but I have no information about the strength of the government’s case, the source of their information, how they you know make these allegations whether it’s based solely on cooperator information or if there’s other corroboration. And so I do think that there are circumstances that the Court can fix to ensure his appearance in court and the safety of the community with extremely strict supervision conditions, ankle monitoring, GPS monitoring.

I would note that although his children are reported to be in Venezuela, his wife is in the United States and did speak to Pretrial Services so he does have an incentive not to flee the country. So we’d request that the Court not detain Mr. Carrascal-Campo.

**THE COURT:** Where do you propose he go?

**MR. VILLA:** I think initially, Your Honor, it would have to be to the halfway house until there's a residence established. It appears that his wife lives in Texas but I'm not certain what the residential circumstances are so we could explore that. And if he does well in the halfway house but I think the only place he can go at this juncture would be La Pasada.

**THE COURT:** My understand -- he reported that he was residing in Colorado Springs. He couldn't recall the address. He stated he rented the home with his wife. The defendant's wife verified this information but was unable to provide an address. Is that --

**MR. VILLA:** That's how I understood the report, Your Honor.

**THE COURT:** So he lives in Colorado, not Texas.

**MR. VILLA:** Well, no, I think that what I was saying his wife was in Texas now.

**THE COURT:** Oh.

**MR. VILLA:** But whether they would be able to continue to reside in Colorado Springs, which as I understand the report was he was renting the place from his boss who he worked for as a contractor, a painter. So whether you know there's a residence available, I don't have that information right now.

**THE COURT:** Okay. All right. I -- based on the

information I have before me at this point, I do find that the defendant should remain in custody pending further proceedings. This is a presumption case and so the presumption applies that he should remain in custody.

I do find that he has not rebutted that presumption but even if he has because that standard is not very high, I find by clear and convincing evidence that no conditions or combination of conditions of release will reasonably assure the safety of any other person in the community. I also find by a preponderance of the evidence that no condition or combination of conditions of release will reasonably assure his appearance as required.

I -- so as I mentioned the offense charged is one that involves while it’s both it would be considered a crime of violence wouldn't it?

**MR. TREMBLEY:** Yes, Your Honor.

**THE COURT:** Okay, both a crime of violence and also a controlled substance offense as well. Isn’t that charged?

**MR. TREMBLEY:** He is charged in the 846 conspiracy.

**THE COURT:** Okay. I won’t make any finding with respect to the weight of the evidence but he would be subject to a lengthy period of incarceration if he’s convicted.

I find a lack of significant family or other ties to the community. He has significant family ties outside of the United States based on his children. He has a lack of legal

status in the United States. He is subject to removal or deportation after serving any period of incarceration. A lack of stable residence, a lack of stable employment.

His attempt to evade law enforcement in this case when they went to arrest him. Use of aliases or false documents. At least there's a proffer here that he was -- he participated in a murder so there's the allegation there.

So certainly the government's proffer of the facts relating to this case, his gang involvement and the fact that he was involved in a murder of another opposing gang member and participated in that murder very personally and then attempted to hide the body and succeeded for a while at least in hiding the body in a suitcase in a remote area in Albuquerque. Also his participation in sex trafficking and threatening to kill at least one of the victims of that offense.

So for all those reasons I find that he should remain in custody pending further proceedings.

Anything else we need to discuss this morning in this case, Mr. Villa?

**MR. VILLA:** Not from the defense, Your Honor.

**THE COURT:** Okay. Anything more from the United States?

**MR. TREMBLEY:** No, Your Honor.

**THE COURT:** All right. Thank you, sir, you are excused.

**MR. TREMBLEY:** May I be excused, Your Honor?

**THE COURT:** Yes, you may, thank you.

**(Proceeding adjourned at 10:33 a.m.)**

**CERTIFICATION**

**I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.**

**May 22, 2026**

**Signed** **Dated**

***TONI HUDSON, TRANSCRIBER***